**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yolanda Gonzales, | No. CV-06-2108-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff has filed a motion for summary judgment. Dkt. #16. Defendant has filed a response and cross-motion for summary judgment. Dkt. ##24, 25. The Court will grant Plaintiff's motion and deny Defendant's cross-motion.

**I.    Background.**

Plaintiff applied for disability insurance benefits on February 27, 2003, claiming disability as of October 17, 2001. Dkt. #10, Tr. 83-85. The application was denied initially and on reconsideration. Tr. 53-54. A hearing was held before an Administrative Law Judge ("ALJ") on April 26, 2004. Tr. 381-413. The ALJ issued a decision on June 4, 2004, finding that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 309-16.

The Appeals Council granted Plaintiff's request for review and remanded the case for further proceedings. Tr. 330-34. Another hearing was held and the ALJ issued a new decision on March 23, 2005, again finding Plaintiff not disabled. Tr. 16-26, 361-80.

1  This decision became Defendant's final decision when the Appeals Council denied review.
2  Tr. 7-9. Plaintiff then commenced this action for judicial review. Dkt. #1.

3  **II.    Standard of Review.**

4  Defendant's decision to deny benefits will be vacated "only if it is not supported by
5  substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
6  882 (9th Cir. 2006). Substantial evidence is more than a mere scintilla, but less than a
7  preponderance. *Id.* In determining whether the decision is supported by substantial
8  evidence, the Court must consider the record as a whole, weighing both the evidence that
9  supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d
10 715, 720 (9th Cir. 1998).

11 **III.   Analysis.**

12 On remand, the ALJ found that Plaintiff had two severe impairments, major
13 depressive disorder and personality disorder. Tr. 17, 25 ¶ 3. The ALJ also found that
14 Plaintiff had several non-severe impairments: asthma, migraine headaches, shoulder bursitis,
15 and fibromyalgia. Tr. 17, 25 ¶ 4. The ALJ determined that Plaintiff's impairments did not
16 meet or equal a listed impairment. Tr. 17, 25 ¶ 3. The ALJ further determined that
17 Plaintiff's testimony regarding the severity of her impairments was not fully credible. Tr.
18 23, 25 ¶ 5. The ALJ concluded that while Plaintiff was not able to perform her past work as
19 a court clerk, she was able to perform simple, repetitive work in an environment with limited
20 social contact. Tr. 24, 25 ¶¶ 6-7.

21 Plaintiff contends that the ALJ erred in concluding that Plaintiff's asthma, migraine
22 headaches, and shoulder bursitis were not severe. Plaintiff further contends that the ALJ
23 erred by giving improper weight to various medical opinions, by discrediting Plaintiff's
24 testimony and ignoring a statement of her sister regarding the severity of her impairments,
25 and by concluding that Plaintiff had the residual functional capacity to perform simple,
26 repetitive work in an environment with limited social contact. Dtk. #21. Defendant argues
27 that the ALJ did not err and that her decision is supported by substantial evidence. Dkt. #27.
28

**A.     The Severity Determination.**

The Appeals Council's remand order directed the ALJ to provide rationale for her finding that Plaintiff's asthma, migraine headaches, and shoulder bursitis were not severe. Tr. 331-32; *see* Tr. 310, 315 ¶ 4. Plaintiff argues that the ALJ failed to provide the required rationale, and that this failure constitutes reversible error. Dkt. #21 at 3-8. The Court agrees.

Dr. Michael Ridge has been Plaintiff's family physician since 1980, and he treated Plaintiff for her alleged impairments from at least October 2001 through December 2004. Tr. 134-41, 199-262, 288-305, 343-53, 376. He opined that there was a direct correlation between the severity of Plaintiff's physical and mental impairments and that the combined effect of the impairments rendered Plaintiff disabled. Tr. 200; *see* Tr. 139-41, 237, 248-49, 253, 289, 351. In finding that Plaintiff's asthma, migraine headaches, and shoulder bursitis were not severe, however, the ALJ considered the effect of each impairment individually. *See* Tr. 21. This constitutes legal error. "[T]he ALJ must consider the combined effect of all of [Plaintiff's impairments] on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing 42 U.S.C. § 423(d)(2)(B)); *see Hammock v. Bowen*, 879 F.2d 498, 500 (9th Cir. 1989) (reversing the denial of benefits where "[t]he Secretary did not consider the combined effect of all of [the claimant's] impairments"); 20 C.F.R. § 404.1520(c); SSR 85-28, 1985 WL 56856, at *3 (1985).

Moreover, substantial evidence does not support the ALJ's finding that Plaintiff's headaches and asthma were not severe. "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290; emphasis in original); *see Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988); SSR 85-28, at *3. In short, the severity determination is merely "'a de minimis screening device used to dispose of groundless claims[.]'" *Webb*, 433 F.3d at 687 (quoting *Smolen*, 80 F.3d at 1290); *see* SSR 85-28, at *2 ("[T]he severity regulation is to do no 'more than allow the Secretary to deny benefits

1  summarily to those applicants with impairments of a minimal nature which could never
2  prevent a person from working.'") (citation omitted).

3        The ALJ found that Plaintiff's headaches were not severe because "she received little
4  in the way of ongoing treatment" and there was "a lack of specific restrictions placed on her
5  by [Dr. Ridge]." Tr. 21.  This finding is belied by the record.  Plaintiff received treatment
6  for chronic headaches numerous times over a three-year period.  Tr. 139, 200-02, 206-07,
7  214-16, 229-30, 236-37, 241-43, 248-49, 253, 255-57, 289-92, 295-98, 344-49, 352-53.
8  The headaches were described as intractable and problematic.  Tr. 141, 214, 230, 253.
9  A physical examination revealed significant muscle spasms around the neck, jaw, and
10 forehead. Tr. 253.  Dr. Ridge prescribed Plaintiff Fioricet, a strong pain reliever and relaxant
11 used to treat tension headache symptoms.  Plaintiff was prescribed the drug over a prolonged
12 period of time and was "taking a fairly significant dosing[.]"  Tr. 291.  Dr. Ridge specifically
13 found that Plaintiff was under a lot of stress and that this was "causing her a significant
14 amount of headache[s]."  Tr. 248; *see* Tr. 289.  Dr. Ridge concluded that Plaintiff's stress-
15 induced headaches precluded her from working as a court clerk.  Tr. 139-41, 200, 249, 351.
16 The ALJ herself acknowledged that Dr. Ridge's treatment records documented ongoing care
17 for headaches and psychological stress, noting that Plaintiff had "reported experiencing more
18 headaches and escalating psychological symptoms due to stress."  Tr. 19 (citing Tr. 343-53).
19 This evidence is more than "sufficient to pass the de minimis threshold of [the severity
20 determination]."  *Webb*, 433 F.3d at 687; *see Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th
21 Cir. 2001) (holding that the ALJ's non-severity finding was not supported by substantial
22 evidence under the "de minimis screening" standard); *see also Keller v. Shalala*, 26 F.3d 856,
23 858 (8th Cir. 1994) (migraine headaches could "constitute an impairment that is more than
24 slight or minimal").

25       The ALJ found that Plaintiff's asthma was not severe because she "did not have
26 severe or frequent asthma attacks requiring medical intervention, emergency room treatment,
27 or hospitalization." Tr. 21.  The ALJ fails to explain why the lack of emergency room care
28 or hospitalization shows that the asthma was only a slight abnormality, and her finding that

1 the asthma did not require medical intervention is not supported by the record as a whole.
2 On numerous occasions Plaintiff was diagnosed with and treated for acute asthma and severe
3 reactive airway disease. *See, e.g.*, Tr. 135, 164, 171, 205-07, 228-30, 282, 289, 295. Plaintiff
4 suffered from forced and prolonged expiratory wheezes, and her frequent coughing caused
5 chest pain. Tr. 206, 216, 228-30, 241, 248, 289, 291, 295-98, 351-53. In August 2003,
6 Dr. Ridge found that Plaintiff wheezed continuously and that she was unable to work
7 "[b]ecause of her significant shortness of breath and cough from her wheezing[.]" Tr. 200.
8 Dr. Ridge confirmed in May 2004 that Plaintiff was "just not able to do her job as a court
9 clerk" due in part to the symptoms of her respiratory problems. Tr. 351. Considering
10 Plaintiff's medical records in their entirety, as the Court must do, the Court concludes that
11 substantial evidence does not support a finding that Plaintiff's asthma had no more than a
12 minimal effect on her ability to work. *See Robbins*, 466 F.3d at 882 ("[A] reviewing court
13 must consider the entire record as a whole and may not affirm simply by isolating a 'specific
14 quantum of supporting evidence.'") (quoting *Hammock*, 879 F.2d at 501); *Day v.*
15 *Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (same); *see also Burnside v. Apfel*, 223
16 F.3d 840, 844-45 (8th Cir. 2000) (short breath may significantly limit the ability to work).

17 Defendant contends that the ALJ properly found that Plaintiff did not have a severe
18 physical impairment because Plaintiff testified at the initial hearing that her *psychological*
19 condition prevented her from working. Dkt. #27 at 2 (citing Tr. 394). This issue goes to
20 credibility, which the Court will address below. For purposes of the severity determination,
21 however, the fact that Plaintiff's psychological impairments were disabling does not mean
22 that her physical impairments were not severe. The law requires that the combined effect of
23 all impairments be considered in determining whether Plaintiff is disabled. *See Smolen*, 80
24 F.3d at 1290. Indeed, the Appeals Council's remand order explicitly required the ALJ to
25 address whether Plaintiff's physical impairments were severe. Tr. 332.

26       **B.**     **The Weighing of Medical Opinions.**

27 The ALJ gave little weight to the opinions of Dr. Ridge and examining physician
28 Dr. Carlos Vega. Tr. 23. Plaintiff argues that the ALJ erred in doing so. Dkt. #21 at 8-11.

The Court agrees.

### 1.     Dr. Ridge.

Dr. Ridge diagnosed Plaintiff with, among other things, asthma, chronic headaches, major depression, anxiety, and adjustment and panic disorders. *See, e.g.*, Tr. 200, 205, 229-30, 236, 253, 291, 351, 353.  In October 2001, Dr. Ridge placed Plaintiff on off-work status for a period of four to six weeks due to her headaches and symptoms of depression and adjustment disorder.  Tr. 141.  Dr. Ridge decided in December 2001 to keep Plaintiff off work for a few more weeks to see if a new medication would help.  Tr. 249.  Dr. Ridge opined in August 2003 that Plaintiff was unable to work for the foreseeable future due to the combination of her physical and mental impairments.  Tr. 200.

"The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)).  "The rationale for giving the treating physician's opinion special weight is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McCallister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989)).  An ALJ may reject "the treating physician's opinion, but only by setting forth 'specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.'" *Rodriguez*, 876 F.2d at 762 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (1986)).

The ALJ gave little weight to Dr. Ridge's opinion on the ground that it "[did] not provide specific limitations, [did] not cite specific findings to support his conclusions, and [was] inconsistent with the medical evidence in [the] file."  Tr. 23.  Dr. Ridge's opinion included findings that Plaintiff had chronic headaches, a progressively worsening reactive airway disease, and deep depression with a significant anxiety component.  Dr. Ridge noted that Plaintiff wheezed continuously despite taking strong medications, including steroids, and that she had a very difficult time concentrating due to her headaches and anxiety.  He concluded that these symptoms and limitations precluded Plaintiff from working.  Tr. 200. The ALJ does not explain, and it is unclear to the Court, why the specific findings and

limitations provided by Dr. Ridge do not support his ultimate conclusion of disability. Moreover, while the evidence in this case includes 100 pages of medical records from Dr. Ridge (*see* Tr. 134-41, 199-62, 288-305, 343-53), the ALJ does not address them in concluding that Dr. Ridge's opinion was not supported by findings and was not consistent with the medical evidence. *See* Tr.23.

"'The ALJ must do more than offer [her] own conclusions. [She] must set forth [her] own interpretations and explain why they, rather than [Dr. Ridge's], are correct.'" *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999) (citation omitted); *see Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("[I]t is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings."). The ALJ's reasons for rejecting Dr. Ridge's opinion are not supported by substantial evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (holding that the ALJ erred in rejecting a treating physician's opinion that the claimant's depression and anxiety rendered her disabled).

**2.   Dr. Vega.**

Plaintiff was examined by Dr. Vega in May 2003. Dr. Vega diagnosed Plaintiff with major depression in partial remission and a personality disorder that required treatment. Tr. 177-80. Dr. Vega opined that Plaintiff had no ability to behave in an emotionally stable manner or relate predictably in social situations. Tr. 176. He further opined that Plaintiff was seriously limited in her ability to, among other things, follow work rules, use judgment, maintain concentration, demonstrate reliability, and relate to co-workers and supervisors. Tr. 175-76.

The ALJ asserted three reasons for giving little weight to Dr. Vega's opinion, but none of them is supported by substantial evidence. First, the ALJ noted that Dr. Vega's examination revealed no discernable cognitive or memory impairment. Tr. 23. The ALJ, however, does not explain why the lack of such impairments undermines Dr. Vega's opinion. The limitations found by Dr. Vega were based on Plaintiff's depression and personality disorder, not a lack of cognitive functioning. *See* Tr. 175-80. Moreover, the ALJ erred by

selectively relying on only some of Dr. Vega's statements and failing to read his statements in the "context of the overall diagnostic picture he [drew]." *Holohan*, 246 F.3d at 1205; *see Edlund*, 253 F.3d at 1158-60 (holding that the ALJ's rejection of an examining psychologist's opinion was in error and not supported by substantial evidence where the ALJ selectively focused on aspects of the opinion suggesting non-liability and failed to discuss the findings that the plaintiff's anxiety disorder seriously limited his ability to relate to other people and respond appropriately to supervision and work pressures).

Second, the ALJ cited Dr. Vega's comments that most of Plaintiff's major psychiatric difficulties occurred the year before the examination and that Plaintiff had a tendency to be overly emphatic regarding her symptoms. Tr. 23. But Dr. Vega specifically found that the psychiatric difficulties Plaintiff was experiencing severely limited her ability to cope in a work environment. Tr. 175-76. He also found that Plaintiff's tendency to exaggerate her symptoms was consistent with the presence of a personality disorder. Tr. 178.

Third, the ALJ relied heavily on the opinions of the state agency consulting physicians who found limitations less significant than those found by Dr. Vega. Tr. 23; *see* Tr. 181-98, 263-280. An ALJ generally should give more weight to the opinion of an examining physician than to opinions of non-examining, consulting physicians. *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); 20 C.F.R. § 416.927(d)(1). Opinions of non-examining physicians may constitute substantial evidence for rejecting the opinion of an examining physician "when they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" *Id.* at 600-01 (citations omitted).

The ALJ rejected Dr. Vega's opinion in favor of the consulting physicians' opinions on the grounds that they were consistent with Plaintiff's global assessment of functioning

1   ("GAF") scores and the assessment of nurse practitioner Rose Garduño. Tr. 23.[1] Plaintiff's
2   medical records show that she had fluctuating GAF scores, with a low of 25 and a high of
3   65. Tr. 135, 147, 174, 282. The ALJ does not explain how this range of GAF scores
4   supports the consulting physicians' opinions.

5   Nor does the ALJ explain why Ms. Garduño's assessment of Plaintiff is more
6   consistent with the consulting physicians' opinions than with Dr. Vega's opinion.
7   Ms. Garduño diagnosed Plaintiff with an anxiety disorder and major depression-recurrent.
8   She found that Plaintiff had poor functioning due to multiple stressors. Tr. 284-87. The ALJ
9   notes that Ms. Garduño believed Plaintiff's "impairment was not expected to be long term."
10  Tr. 23. But the ALJ herself acknowledged that Ms. Garduño found Plaintiff disabled as of
11  April 2002 and expected the disability to last for at least three to six months. Tr. 23; *see* Tr.
12  284-87. The fact that Ms. Garduño simply could not predict whether Plaintiff would be able
13  to return to work beyond this time period does not render her assessment of Plaintiff
14  consistent with the consulting physicians' opinions. Those opinions found only mild to
15  moderate limitations. Tr. 181-98, 263-280. Ms. Garduño, by contrast, found Plaintiff
16  disabled, noting that she had made "limited progress" and that her "prognosis [was]
17  guarded." Tr. 286-87.

18  The ALJ's reasons for rejecting Dr. Vega's opinion are not supported by substantial
19  evidence. *See Holohan*, 246 F.3d at 1205.

20  **C.   Plaintiff's Testimony.**

21  Plaintiff testified at the initial hearing that she stopped working as a court clerk in
22  October 2001 due to the limitations imposed by her mental impairments. Tr. 385. Plaintiff
23  stated that her depression and anxiety led to bouts of constant crying and caused her to feel
24  hopeless, isolated, and tired. Tr. 385-90. Plaintiff further stated that her stress caused

---

[1] A GAF score is an estimate of a person's psychological, social, and occupational functioning used to reflect the person's need for treatment. *See Morgan*, 169 F.3d at 598 n.1; *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score of 41 to 50 indicates severe symptoms or severe difficulty in functioning and a GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in functioning. *See id*.

1  debilitating headaches and that she was unable to cope with work-related stress. Tr. 390.
2  The ALJ found this testimony not fully credible. Tr. 21-22, 25 ¶ 5.

3  "Once a claimant produces objective medical evidence of an underlying impairment,
4  an ALJ may not reject a claimant's subjective complaints based solely on lack of objective
5  medical evidence to fully corroborate the alleged severity of [the symptoms]." *Moisa v.*
6  *Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen*,
7  80 F.3d at 1282 ("The claimant need not . . . produce objective medical evidence of the
8  causal relationship between the medically determinable impairment and the symptom.")
9  (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your
10 statements about the intensity and persistence of your . . . symptoms or about the effect your
11 symptoms have on your ability to work solely because the objective medical evidence does
12 not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996)
13 (same); *see also* SSR 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms
14 sometimes suggest a greater severity of impairment than can be shown by objective medical
15 evidence alone, careful consideration must be given to any available information about
16 symptoms."). In addition, and significantly for this case, unless the ALJ "makes a finding
17 of malingering based on affirmative evidence thereof, he or she may only find [the claimant]
18 not credible by making specific findings as to credibility and stating clear and convincing
19 reasons for each." *Robbins*, 466 F.3d at 883. "'General findings are insufficient; rather, the
20 ALJ must identify what testimony is not credible and what evidence undermines the
21 claimant's complaints.'" *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821,
22 834 (9th Cir. 1995)).

23 The ALJ found that Plaintiff had a medically determinable impairment that could
24 reasonably be expected to produce her alleged symptoms. Tr. 21, 25 ¶ 5. Because the ALJ
25 made no finding of malingering, she was required to give clear and convincing reasons in
26 support of her adverse credibility findings. *See Robbins*, 466 F.3d at 883. This clear and
27 convincing standard "is the most demanding required in Social Security cases." *Moore v.*
28 *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

1    The ALJ asserted multiple reasons for rejecting Plaintiff's testimony.  The Court
2 concludes that none of them is convincing or supported by substantial evidence.

3    First, the ALJ found that the alleged intensity, persistence, and limiting effects of
4 Plaintiff's psychological symptoms were inconsistent with the medical evidence.  Tr. 21.
5 Substantial evidence does not support the ALJ's finding.  The ALJ noted that Plaintiff was
6 doing better in January 2002, and that while she subsequently received in-patient psychiatric
7 care and continued to complain of depression and anxiety in response to situational stress,
8 she reported some improvement in November 2002.  Tr. 21.  "That a person who suffers
9 from severe panic attacks, anxiety, and depression makes some improvement does not mean
10 that the person's impairments no longer seriously affect her ability to function in a
11 workplace." *Holohan*, 246 F.3d at 1205.  The ALJ does not explain, and it is unclear to the
12 Court, why the fact that Plaintiff occasionally experienced some improvement renders her
13 description of disabling impairments incredible.  This Circuit has made clear that an ALJ's
14 rejection of testimony is in error and not supported by substantial evidence where the ALJ
15 has "selectively focused on aspects of [medical records] which tend to suggest non-
16 disability[.]" *Edlund*, 253 F.3d at 1159-60; *see Holohan*, 246 F.3d at 1205.  The ALJ erred
17 by relying on selective medical records and failing to consider the evidence as a whole.  *See*
18 *id.*

19    Second, the ALJ found that Plaintiff had failed to adequately justify her inability to
20 pay for mental health treatment.  Tr. 21-22.  The ALJ noted that Plaintiff received $2,000 a
21 month in long term disability benefits, but does not address how this amount would enable
22 Plaintiff to afford both her living expenses and the cost of all her medical care.  Moreover,
23 the ALJ's finding is not supported by the evidence.  Plaintiff testified that she could not
24 afford psychological counseling due to the loss of her medical insurance.  Tr. 399-400.  She
25 stated that in addition to her utility and other personal bills, she paid $400 a month in rent,
26 $300 a month for her medications, and $150 each time she visited Dr. Ridge.  Tr. 398-99.
27 A review of the entire record confirms Plaintiff's financial problems, as well as the resulting
28 stress and anxiety.  Dr Ridge's records note that Plaintiff was "very anxious" because she

1   "was no longer on insurance" and "[could not] afford her medications," that she was "off of
2   her insurance, which cause[d] her problems," and that she had "a lot of economic problems."
3   Tr. 291, 295, 297.  Other records note that Plaintiff was behind in her payments, was
4   bouncing checks, and had "mounting financial problems," including being evicted from her
5   home and being liable for a $16,000 judgment.  Tr. 146, 149, 157, 166.  One record states
6   that Plaintiff "often pays for meds rather than food."  Tr. 147.  Her healthcare providers tried
7   to help by giving her free sample medications and recommending that she contact
8   pharmaceutical companies to inquire about discounts.  Tr. 147, 291, 295, 297, 345, 347.
9   Considering the record as a whole and in the proper context, the Court concludes that
10  substantial evidence does not support the ALJ's finding that Plaintiff failed to justify her
11  inability to pay for psychological treatment.[2]

12       Third, the ALJ found Plaintiff not credible on the ground that she failed to comply
13  with her prescribed treatment plan and often canceled doctor appointments or simply did not
14  show up for scheduled visits.  Tr. 22.  Plaintiff's failure to obtain or follow through on her
15  mental health treatment is not a valid reason for rejecting her testimony.  This Circuit has
16  explicitly "criticized the use of lack of treatment to reject mental complaints both because
17  mental illness is notoriously underreported and because it is a questionable practice to
18  chastise one with a mental impairment for the exercise of poor judgment in seeking
19  rehabilitation." *Regennitter*, 166 F.3d at 1299-1300 (citations omitted).  Moreover, there is
20  evidence that Plaintiff had to cancel appointments due to migraine headaches and her
21  inability to cover even minimal co-payments.  Tr. 145, 151.

22       Fourth, the ALJ concluded that there was an inconsistency in the treatment notes
23  regarding Plaintiff's diminished appetite and weight loss.  The ALJ stated that while Plaintiff
24  reported that she forced herself to eat, the treatment notes show that her weight had remained

---

[2]The ALJ also noted that Plaintiff could not name any places she had contacted to try to obtain low cost psychological treatment. Tr. 21.  To the contrary, Plaintiff identified two specific clinics.  Plaintiff could not afford the first one and was on a waiting list for the second one.  Tr. 399-400.

- 12 -

1  "relatively stable." Tr. 22. The ALJ does not explain what she means by "relatively stable."
2  On October 17, 2001 – the alleged onset date of disability – Plaintiff weighed 170 pounds.
3  Tr. 262. She lost 11 pounds over the next three months, weighing 159 pounds in January
4  2002. Tr. 240. Other weight changes are reflected in the medical records. For example,
5  Plaintiff weighed 162 pounds on May 15, 2002 and 159 pounds eighteen days later. Tr.
6  236-37; *see* Tr. 290-92 (17 pound change from October to November 2002). A state agency
7  physician specifically found that Plaintiff's medical records reflected an "appetite
8  disturbance with change in weight." Tr. 184. Substantial evidence does not support the
9  purported inconsistency between Plaintiff's diminished appetite and weight loss.

10  Fifth, the ALJ noted that Plaintiff "was able to represent herself in contested and
11  protracted probate proceedings, attending court hearing[s] and preparing legal documents
12  since 1998 when her mother died." Tr. 22. The ALJ failed to recognize, however, that the
13  court battle between Plaintiff and her siblings over the sale of their deceased mother's home
14  was a cause of Plaintiff's stress and depression. *See* Tr. 148-49, 153-59, 163-64, 174, 353.
15  The proceedings were so stressful that Plaintiff passed out in the courtroom and had to admit
16  herself to a psychiatric treatment facility following emergency room care. Tr. 170, 240,
17  402-03. Plaintiff reported that being forced to sell the home, which she helped build, was
18  the "final straw" leading to her in-patient psychiatric care. Tr. 164. Plaintiff represented
19  herself in the proceedings only because she could not afford an attorney, and ultimately lost
20  the dispute resulting in her eviction from the home and a $16,000 judgment against her.
21  Tr. 149, 157, 166, 397. Plaintiff's participation in the court proceedings does not support the
22  ALJ's adverse credibility finding.

23  Sixth, the ALJ found that Plaintiff lived alone at times and was able to cook, clean,
24  shop, receive visitors, and care for her grandson. The ALJ noted that Plaintiff also spent time
25  watching television or reading and attended church and a bible study group. Tr. 22 (citing
26  Tr. 99-102). An ALJ "may reject a claimant's symptom testimony if the claimant is able to
27  spend a substantial part of her day performing household chores or other activities that are
28  transferrable to a work setting." *Smolen*, 80 F.3d at 1284 n.7 (citing *Fair v. Bowen*, 885 F.2d

597, 603 (9th Cir. 1989)). In this case, the ALJ did not address the limited nature of Plaintiff's activities or whether such activities were transferrable to the work place. Moreover, an examination of the entire record "shows that the ALJ has erred in characterizing statements and documents contained therein to reach the conclusion that [Plaintiff] exaggerated her symptoms." *Reddick*, 157 F.3d at 722.

While Plaintiff indicated in an activities questionnaire that she shopped and did some house work, she made clear that she shopped only once a month for personal items and often was unable to finish a household chore due to her poor mental health. Tr. 100. She also stated that she had little interest in life, lacked the energy to bathe and dress herself, and spent hours sitting and thinking about what she needed to do but simply could not muster the energy to do it. Tr. 99. The ALJ's "paraphrasing of the [activities questionnaire] is not entirely accurate regarding the content or tone of the [questionnaire]" *Reddick*, 157 F.3d at 722. Plaintiff's activities do not contradict her testimony of disabling impairments, nor do they "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

With respect to Plaintiff's church activities, she testified that she met weekly with a small group to pray and talk about the bible. Tr. 401. "Several courts, including [this Circuit], have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722 (citations omitted). The mere fact that Plaintiff participated in her church once a week "does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603); *see Orn*, 495 F.3d at 639 (citing *Vertigan*); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" to be eligible for benefits).

Plaintiff's medical records show that she occasionally cared for her grandson because it forced her to "get up and [go] outside" rather than "sitting and crying" all day. Tr. 157. The ALJ does not explain how this activity would transfer to the work place.

Finally, the ALJ stated that there were indications that Plaintiff looked for work. Tr. 22 (citing Tr. 143, 170-74). The cited evidence, however, shows that Plaintiff had "continued *stress* related to [her] job search" and the decision "whether to remain in [her] long time job or make life changes." Tr. 143, 171 (emphasis added). Moreover, "the Social Security Act and regulations are designed 'to encourage individuals who have previously suffered from a disability to return to substantial gainful employment[.]'" *Moore*, 278 F.3d at 925 (quoting *Flaten v. Sec. of HHS*, 44 F.3d 1453, 1458 (9th Cir. 1995)). Plaintiff's attempt to find work is an insufficient reason for disbelieving Plaintiff.[3]

### D. The Statement of Plaintiff's Sister.

Plaintiff's sister, Dolores Riddle, completed an activities questionnaire corroborating Plaintiff's claim of disabling impairments. Ms. Riddle described Plaintiff as extremely isolated and depressed. She stated that Plaintiff would go days without bathing, would stay in bed most of the day, and would not leave the house or answer the phone. She further stated that she regularly checked in on Plaintiff to make sure Plaintiff was eating and taking her medications. Tr. 103-09.

Plaintiff argues that the ALJ erred in failing to consider this evidence. Dkt. #21 at 11-12. Plaintiff is correct. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing 20 C.F.R. § 404.1513(d)-(e)); *see* 20 C.F.R. § 404.1545(a)(3) ("We will . . . consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms . . . provided by you, your family, neighbors, friends, or other persons."); SSR 06-03p, 2006

---

[3]The ALJ also noted that it appeared that Plaintiff attended school. Tr. 22 (citing Tr. 172). The cited medical record provides, "School: GED & currently @ UOP." Tr. 172. "UOP" may be a reference to the University of Phoenix. Plaintiff testified at the hearing, however, that she had not returned to school or attempted to take any classes. Tr. 401. Even if the Court were to assume that Plaintiff was enrolled in school, the record does not indicate whether Plaintiff took classes in person or on-line, whether she took more than one class, or whether she performed well or poorly.

WL 2329939 (Aug. 9, 2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996). "Indeed, 'lay testimony as to the claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment.'" *Stout*, 454 F.3d at 1053 (emphasis in original; citation and alteration omitted). "Consequently, 'if the ALJ wishes to discount the testimony of lay witnesses, [she] must give reasons that are germane to each witness.'" *Id.* (citation and alteration omitted). The ALJ did not expressly determine to disregard Ms. Riddle's questionnaire. This constitutes legal error. *See id.*; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Defendant contends that the error is harmless because the questionnaire actually supports the ALJ's decision that Plaintiff's impairments "did not prevent Plaintiff from her extensive daily activities." Dkt. #27 at 6-7. A fair reading of the questionnaire belies this contention. Ms. Riddle stated that Plaintiff had not shown much interest in her activities since the onset of disability, could not concentrate or complete a task, and became easily confused and irritated. Tr. 104-08.

### E.     The RFC Determination.

The ALJ determined that Plaintiff had the residual functional capacity to perform simple, repetitive work in an environment with limited social contact. Tr. 24, 25 ¶¶ 6-7. For the reasons set forth above, the Court cannot conclude that this determination is free from error or supported by substantial evidence.

### F.     The Decision to Remand for Further Proceedings or an Award of Benefits.

Having decided to vacate Defendant's decision, the Court has the discretion to remand the case for further development of the record or for an award benefits. *See Reddick*, 157 F.3d at 728. In *Smolen*, the Ninth Circuit held that evidence should be credited and an action remanded for an immediate award of benefits when the following three factors are satisfied: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be

1 made, and (3) it is clear from the record that the ALJ would be required to find the claimant
2 disabled were such evidence credited. 80 F.3d at 1292; *see Varney v. Sec. of HHS*, 859 F.2d
3 1396, 1400 (9th Cir. 1988) (*Varney II*) ("In cases where there are no outstanding issues that
4 must be resolved before a proper determination can be made, and where it is clear from the
5 record that the ALJ would be required to award benefits if the claimant's excess pain
6 testimony were credited, we will not remand solely to allow the ALJ to make specific
7 findings regarding that testimony."); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)
8 (same); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("In a recent case where the
9 ALJ failed to provide clear and convincing reasons for discounting the opinion of claimant's
10 treating physician, we accepted the physician's uncontradicted testimony as true and awarded
11 benefits.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988)); *Hammock*, 879 F.2d
12 at 503 (extending *Varney II*'s "credit as true" rule to a case with outstanding issues where the
13 claimant already had experienced a long delay and a treating doctor supported the claimant's
14 testimony).

15 On many occasions since *Smolen*, the Ninth Circuit has reaffirmed the rule that
16 improperly rejected evidence must be credited as true. *See Lester*, 81 F.3d at 834; *Reddick*,
17 157 F.3d at 729; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *McCartey v.*
18 *Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002); *Moisa*, 367 F.3d at 887; *Benecke*, 379
19 F.3d at 593-95.[4] Applying these cases, the Court concludes that the improperly rejected
20 evidence of disabling impairments should be credited as true and the case remanded for an
21 award of benefits. The ALJ acknowledged that in making her adverse credibility
22 determinations she had reviewed with care all the documentary evidence of record and had
23 considered fully the testimony given at the hearing as well as the arguments made on
24 Plaintiff's behalf. Tr. 17. Moreover, Plaintiff's subjective complaints are consistent with the

25

26 [4]At least one Ninth Circuit panel has declined to apply the "credit as true" doctrine.
27 *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). Although this Court would be
inclined to agree with *Connett*'s approach, the overwhelming authority in this Circuit makes
28 clear that the "credit as true" doctrine is mandatory. Until an *en banc* panel reverses course,
this Court must follow *Lester*, *Reddick*, *Harman*, *McCartey*, *Moisa*, and *Benecke*.

medical evidence as a whole. The vocational expert testified that if Plaintiff's testimony is credited, a disability finding would be required. Tr. 366-70. Thus, "a remand for further proceedings would serve no useful purpose." *Reddick*, 157 F.3d at 730; *see Orn*, 495 F.3d at 640 (remanding for an award of benefits where it was "'clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony'") (quoting *Connett*, 340 F.3d at 876).

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (Dkt. #16) is **granted**.
2. Defendant's cross-motion for summary judgment (Dkt. #25) is **denied**.
3. Defendant's administrative decision denying benefits is **reversed**.
4. The case is remanded to Defendant for an award of benefits.
5. The Clerk is directed to terminate this action.

DATED this 6th day of November, 2007.

David G. Campbell
United States District Judge